# Supreme Court of Florida

_____

No. SC14-399
_____

**JACOB THOMAS GAULDEN,**
Petitioner,

vs.

**STATE OF FLORIDA,**
Respondent.

[July 7, 2016]

PER CURIAM.

We have for review Gaulden v. State (Gaulden II), 132 So. 3d 916 (Fla. 1st

DCA), review granted, 145 So. 3d 824 (Fla. 2014), in which the First District

Court of Appeal interpreted the meaning of the phrase "involved in a crash" in

Florida's hit-and-run statute, section 316.027, Florida Statutes (2010).  Having

concluded that a driver's vehicle may be "involved in a crash" under this statute

when a passenger separates from a moving vehicle and lands on the roadway or

adjacent area, the district court affirmed Petitioner's conviction for leaving the

scene of a crash resulting in a person's death, a first-degree felony.  Accordingly,

the district court certified to this Court a question of great public importance

concerning whether a violation of the statute requires a collision with the driver's vehicle. We have jurisdiction. See art. V, § 3(b)(4), Fla. Const. For the reasons we explain, we disagree with the First District's conclusion and answer the certified question in the negative.

## I. BACKGROUND

Jacob Thomas Gaulden was charged with leaving the scene of a crash involving a death, a first-degree felony under section 316.027(1)(b). State v. Gaulden (Gaulden I), 134 So. 3d 981, 982 (Fla. 1st DCA 2012). In brief, the statute requires "[t]he driver of any vehicle involved in a crash . . . that results in the death of any person" to "immediately stop" at the scene, comply with certain reporting requirements, and render assistance to anyone injured. § 316.027(1)(b), Fla. Stat.; see § 316.062, Fla. Stat. (containing reporting and assistance requirements). Gaulden moved to dismiss the charge, arguing that he was not "involved in a crash" within the meaning of the statute. Gaulden I, 134 So. 3d at 982. The trial court agreed, concluding that "when a passenger suffers death as a result of being separated from the driver's moving vehicle[,]" there is no "crash" within the meaning of the statute. Id.

The State appealed the dismissal of the charge, and the district court reversed. Id. at 984. The majority of the district court panel in Gaulden I held that the hit-and-run statute requires a driver to stop when "his vehicle is a participant in,

or has an effect on, a collision that results in injury or death[,]" and noted that the law "does not require that the collision be between two vehicles or even that a vehicle be one of the colliding objects." Id. at 983. The district court reasoned that because "a passenger of [Gaulden's] moving vehicle collided with the road as he became separated from the vehicle[,]" and was killed, the decedent's "collision [with the roadway] constituted a crash." Id. at 984. Accordingly, the district court concluded Gaulden was "properly subject to criminal prosecution" under the hit-and-run statute. Id. The district court reversed the dismissal of the charge and remanded the case to the trial court. Id.

On remand to the circuit court, the evidence at retrial showed that in the early morning hours of December 19, 2010, a number of people were gathered near a chicken stand when the decedent recognized a red truck stopped nearby on the side of the road. The decedent walked over to the red truck, spoke to the driver, and the driver waved the decedent into the vehicle. The decedent got in, and the truck drove away. Approximately ten minutes later the truck returned and stopped in the roadway. Petitioner admitted that he and the decedent began fighting. As they fought, the decedent opened the passenger door, and the interior light came on. The truck suddenly accelerated and swerved, and the passenger door slammed shut. The decedent was no longer in the truck. Although the truck was moving when the decedent exited the vehicle, Petitioner did not think the truck was

traveling fast enough to seriously hurt the decedent.  The decedent's body was found on the ground adjacent to the roadway.  His body evidenced road rash consistent with tumbling across the surface of the road, lacerations from blunt force trauma, contusions of the brain, and a fractured skull.  Gaulden was convicted of leaving the scene of a crash that resulted in death in violation of section 316.027(1)(b), Florida Statutes.

On appeal to the First District in Gaulden II, Gaulden argued that the trial court committed fundamental error by instructing the jury that a guilty verdict could be based on a finding that Gaulden "knew or should have known that injury or death had occurred."  Gaulden II at 132 So. 3d at 918-19 (emphasis in original). He contended the State must prove "that he should have known (from the nature of the 'crash') that a fatal injury had occurred, not merely that an injury of some kind had resulted."  Id. 919.  The district court correctly rejected this contention, citing our decision in State v. Dumas, 700 So. 2d 1223, 1225-26 (Fla. 1997).  Id. at 919-20.  In Dumas, we explained that "[t]he fact that a death rather than an injury has occurred does not trigger a different set of duties [under the statute].  Thus, the knowledge element that triggers the affirmative duty is the same in each circumstance, but the sanction imposed is determined by the results of the accident."  Dumas, 700 So. 2d at 1225-26.

The issue in this review concerns Gaulden's second argument to the district court. He claimed that fundamental error occurred when the trial court failed to instruct the jury that the State had to prove the defendant had actual knowledge of the crash. Gaulden II, 132 So. 3d at 920. The district court rejected this argument because "Gaulden conceded he knew his passenger suddenly left the moving vehicle, and could not have been unaware that, whether the passenger jumped or was pushed, he was destined to hit the paved shoulder, if not the roadway itself." Id. Accordingly, under the definition of "involved in a crash" the district court announced in Gaulden I, the district court in Gaulden II rejected Gaulden's claim and affirmed without discussion the other issues raised. The First District certified the following question as one of great public importance:

> WHEN A PASSENGER SEPARATES FROM A MOVING VEHICLE AND COLLIDES WITH THE ROADWAY OR ADJACENT PAVEMENT, BUT THE VEHICLE HAS NO PHYSICAL CONTACT EITHER WITH THE PASSENGER, AFTER THE PASSENGER'S EXIT, OR WITH ANY OTHER VEHICLE, PERSON, OR OBJECT, IS THE VEHICLE "INVOLVED IN A CRASH" SO THAT THE DRIVER MAY BE HELD CRIMINALLY RESPONSIBLE FOR LEAVING THE SCENE?

Gaulden II, 132 So. 3d at 922.

## II. ANALYSIS

The answer to the certified question turns on the meaning of the operative phrase—"involved in a crash"—in section 316.027, which is a criminal statute.

Our review is de novo.  Kasischke v. State, 991 So. 2d 803, 807 (Fla. 2008); Tillman v. State, 934 So. 2d 1263, 1269 (Fla. 2006).  To answer the certified question, we must examine the plain language of the statute and be guided by certain rules in our analysis.  "The cardinal rule of statutory construction is 'that a statute should be construed so as to ascertain and give effect to the intention of the Legislature as expressed in the statute.' "  City of Tampa v. Thatcher Glass Corp., 445 So. 2d 578, 579 (Fla. 1984) (quoting Deltona Corp. v. Fla. Pub. Serv. Comm'n, 220 So. 2d 905, 907 (Fla. 1969)).  Thus, "[w]hen the statute is clear and unambiguous, courts will not look behind the statute's plain language for legislative intent or resort to rules of statutory construction to ascertain intent."  Borden v. East-Eur. Ins. Co., 921 So. 2d 587, 595 (Fla. 2006) (quoting Daniels v. Fla. Dep't of Health, 898 So. 2d 61, 64 (Fla. 2005)).  But "if the statute is ambiguous on its face, the Court can only then rely upon the rules of statutory construction in order to discern legislative intent."  Koile v. State, 934 So. 2d 1226, 1233 (Fla. 2006).  The statute at issue in this case provides in pertinent part as follows:

> (1)(a)  The driver of any vehicle involved in a crash occurring on public or private property that results in injury of any person must immediately stop the vehicle at the scene of the crash, or as close thereto as possible, and must remain at the scene of the crash until he or she has fulfilled the requirements of s. 316.062.  Any person who willfully violates this paragraph commits a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.

(b) The driver of any vehicle <u>involved in a crash</u> occurring on public or private property that results in the death of any person must immediately stop the vehicle at the scene of the crash, or as close thereto as possible, and must remain at the scene of the crash until he or she has fulfilled the requirements of s. 316.062. Any person who willfully violates this paragraph commits a felony of the first degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084. Any person who willfully violates this paragraph while driving under the influence as set forth in s. 316.193(1) shall be sentenced to a mandatory minimum term of imprisonment of 2 years.

§ 316.027(1), Fla. Stat. (2010) (emphasis added). The statute requires the "driver of any vehicle <u>involved in a crash</u>" that results in the injury or death of a person to immediately stop the vehicle at the scene, and in accordance with section 316.062, remain at the scene to comply with certain reporting requirements and to render aid to anyone injured. <u>Id.</u> (emphasis added). Violation of this provision is a felony offense. Because this is a criminal statute, the language must be strictly construed. § 775.021(1), Fla. Stat. (2010) ("The provisions of this code and offenses defined by other statutes shall be strictly construed[.]"). Accordingly, if "the language is susceptible of differing constructions, it [must] be construed most favorably to the accused." <u>Id.</u>

In <u>Gaulden I</u>, the First District began its analysis of the disputed statutory language by examining the meanings of the words <u>involved</u> and <u>crash</u> as construed in the same or similar statutes. 134 So. 3d at 982-83. In <u>State, Department of Highway Safety v. Williams</u>, 937 So. 2d 815, 816 (Fla. 1st DCA 2006), the First DCA, upon certiorari review, had previously considered whether there had been a

- 7 -

"traffic crash" within the meaning of a different statute, section 316.645, Florida

Statutes (2005). The appellant in Williams had driven through a stop sign, across

the road, and into a drainage ditch, resulting in damage to the front end of her car.

937 So. 2d at 816. The statute in that case, like section 316.027(1)(b) in the instant

case, did not define crash. To define this word the district court found that the

circuit court

> properly took into consideration the commonly accepted definitions of
> the terms "crash," variously defined as "a breaking to pieces by or as
> if by collision" or "an instance of crashing," Webster's Collegiate
> Dictionary, 271 (10th ed. 1998), and "collide," which in turn means
> "to come together with solid or direct impact[.]"

Williams, 937 So. 2d at 817. However, the district court found the trial court erred

in determining that no "traffic crash" occurred by also requiring "forceful contact"

with a person or object resulting in more than nominal damages, elements not

stated in the statute. Id.

Subsequently, in State v. Elder, 975 So. 2d 481 (Fla. 2d DCA 2007), the

Second District also employed the dictionary to ascertain the application of the hit-

and-run statute to the facts of that case. Elder was convicted under section

316.027(1)(b), as was Petitioner in this case. In that case, Elder turned into the

path of another car, causing the victim to swerve his automobile off the road. 975

So. 2d at 482. This caused the victim's car to flip, killing the victim and ejecting

the passenger. Elder moved to dismiss the charge of leaving the scene of a crash

resulting in a death, arguing that no crash occurred because there was no "actual contact between the two vehicles."  The Second District reversed the trial court's granting of the motion, reasoning that "[a]lthough Elder's car did not crash, Elder was nevertheless 'involved' in the crash because her driving caused [a crash]."  The appellate court explained as follows:

> Section 316.027(1)(b) does not limit its application to the driver of any vehicle that collides with another vehicle but instead requires the driver of any vehicle "involved" in a crash to stop.  "Involved" is a word of common usage, not defined in the statute, and as such should be construed in its plain and ordinary sense.  Francis v. State, 808 So. 2d 110, 138 (Fla. 2001).  "Involve" is defined, in pertinent part, as "to draw in as a participant," to "implicate," "to relate closely," to "connect," "to have an effect on," to "concern directly," to "affect." Webster's Third New International Dictionary 1191 (1986).  Clearly, a driver of a vehicle that causes a crash is "involved" in the crash.

Id. at 483 (emphasis added).  In support of this conclusion, the Second District cited cases from Florida and other states holding that to be "involved" in a crash or accident does not require the collision of the driver's vehicle with another vehicle. See id. at 483-84.  Accordingly, the district court held that Elder's driving caused the crash of a vehicle that resulted in a death and reversed the trial court's dismissal of the charges against Elder.

In both Williams and Elder, a vehicle—although not necessarily the defendant's vehicle—collided with another vehicle or object.  The driver in Williams ran a stop sign and ultimately crashed into a drainage ditch, and in Elder, the defendant turned into the path of another car, resulting in the other driver

crashing her vehicle while trying to avoid hitting the defendant's vehicle. Citing these cases, the First District panel in Gaulden I determined that the "statute does not require that the driver's vehicle be one of the colliding objects[,]" "that the collision be between two vehicles or even that a vehicle be one of the colliding objects." Gaulden I, 134 So. 3d at 983 (emphasis added). Thus, the court took the expansive view that "any collision resulting in death or injury to a person" is a "crash" within the meaning of the statute. The district court found this construction furthered the purpose of the statute, namely "to protect people, not vehicles[.]" Id. at 984. This broad reading of the statute, however, is counter to the strict construction required in applying a criminal statute.

The state statute prohibits leaving the scene of a "crash." The plain language of the statute contemplates that a vehicle will "crash" into an object, a person, or an animal. In her dissent in Gaulden I, Judge Davis pointed out that the majority's broad construction of the statute was more consistent with the prior iteration of the statute which used the word accident, not crash. She noted that the legislative staff analysis of the 1999 revision to 316.027(1) explained that the reason for replacing accident with crash was " 'to update and conform terminology and to more accurately describe[] a collision involving a motor vehicle.' " Gaulden I, 134 So. 3d at 984 (Davis, J., dissenting). Contrary to Petitioner's claim,

- 10 -

accident is less specific than crash. The latter by definition requires a collision, but accident does not.

In support of her dissent, Judge Davis relied on Armstrong v. State, 848 N.E.2d 1088, 1091 (Ind. 2006)—in which an Indiana statute, much like Florida's former statute, provided that "[t]he driver of a vehicle involved in an accident that results in . . . death" who leaves the scene without complying with the statute commits a felony. Similar to the facts of the instant case, the passenger in a vehicle opened the passenger door and jumped out while the vehicle was in motion. Id. at 1090. The passenger fell on the pavement and lay still. Noting that fact and believing the passenger was injured, Armstrong drove away. Id. The Indiana Supreme Court agreed with the lower appellate court that Armstrong was "involved in an accident." And although accident was a term not defined by statute, the court determined that accident means "an 'unexpected and undesirable event, especially one resulting in damage or harm[.]' " Id. at 1092 (quoting Armstrong v. State, 818 N.E.2d 93, 97 (Ind. Ct. App. 2004)). Accordingly, under such a broad definition, the court agreed that "[t]he duties the statute imposes upon a driver are triggered regardless of whether the driver's vehicle struck anyone or anything." Id.

In order to uphold Gaulden's conviction under this statute, the district court panel in Gaulden II expanded the interpretation of the statutory phrase "any vehicle

- 11 -

involved in a crash" to include a passenger separating from a vehicle and colliding with the pavement. This holding is inconsistent with the Legislature's decision to narrow the statute by replacing accident with crash in section 316.027. To the degree that this alteration of the statute creates ambiguity as to the statute's applicability, this Court is required under the rule of lenity to construe it in favor of the accused. Accordingly, we hold that the operative phrase "any vehicle involved in a crash" means that a vehicle must collide with another vehicle, person, or object. Plainly, under the undisputed facts of this case, no vehicle was involved in a collision within the meaning of the statute. Accordingly, we answer the certified question in the negative, quash the district court's decision, and remand the cause to the district court for application of our decision in this case.

It is so ordered.

LABARGA, C.J., and PARIENTE, LEWIS, QUINCE, and PERRY, JJ., concur.
CANADY, J., concurs in result with an opinion, in which POLSTON, J., concurs.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

CANADY, J., concurring in result.

I concur with the reasoning of the per curiam opinion, except that I would not rely on legislative history. I thus agree that the statutory rule of strict construction requires that criminal liability under section 316.027 not be imposed in the circumstances presented by this case. The statutory phrase "vehicle involved

in a crash" is commonly understood to refer to circumstances in which the vehicle has been in a collision with something or someone. For example, a vehicle is "involved in a crash" if it has been in a collision with a person or another vehicle, has hit a telephone pole, tree, or some similar object, has run into a building or other structure, or has flipped over and crashed into the ground. Those are the types of circumstances that commonly come to mind when the phrase "vehicle involved in a crash" is used.

The circumstance of a passenger falling from a vehicle and crashing into the road is not commonly brought to mind by the phrase "vehicle involved in a crash." It is no doubt true that "involved" has an extended meaning that would cover the circumstance presented by such a passenger crashing into the road. But the rule of strict construction forbids application of that broader meaning of the statutory language. "When a rule of conduct is laid down in words that evoke in the common mind" particular circumstances, the rule of strict construction precludes application of that rule of conduct to different circumstances. McBoyle v. United States, 283 U.S. 25, 27 (1931).

POLSTON, J., concurs.

Application for Review of the Decision of the District Court of Appeal - Certified Great Public Importance

First District - Case No. 1D12-3653

(Escambia County)

Nancy Ann Daniels, Public Defender, and Mary Jane Lord, Assistant Public Defender, Second Judicial Circuit, Tallahassee, Florida,

    for Petitioner

Pamela Jo Bondi, Attorney General, Trisha Meggs Pate, Bureau Chief, and Giselle Denise Lylen, Assistant Attorney General, Tallahassee, Florida,

    for Respondent